# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | | |
|---|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 5:17-cv-82** |
| **v.** | ) ) ) | |
| **FIRST NBC BANK,** | ) ) | |
| **Defendant.** | ) ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, LIBERTY MUTUAL INSURANCE COMPANY ("Liberty"), by and through its undersigned attorneys of Conner Gwyn Schenck PLLC and Watt, Tieder, Hoffar & Fitzgerald, L.L.P., and for its Complaint for Declaratory Judgment and Other Relief against Defendant, FIRST NBC BANK ("First NBC"), states as follows:

### THE PARTIES

1.      Liberty is a Massachusetts corporation and citizen organized and existing under the laws of the State of Massachusetts with its principal office in Boston, Massachusetts.

2.      First NBC Bank ("First NBC") is a Louisiana state non-member bank and a wholly owned subsidiary of First NBC Holding Company, a Louisiana corporation.

### JURISDICTION AND VENUE

3.      Jurisdiction is proper in this Court, pursuant to 28 U.S.C. §1332(a)(1) in that the matter in controversy, exclusive of interests and costs, exceeds the sum or value of $75,000, and is between citizens of different states.

4.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to Liberty's claims occurred in this District as more specifically discussed below.

## FACTUAL BACKGROUND

### The Contracts and Bonds

5.     At all times relevant hereto, DeVere Construction Company, Inc., ("DeVere") was in the business of providing general contracting services for public and private construction projects.

6.     In accordance with several contracts DeVere entered into with project owners, and in accordance with applicable statutory requirements, DeVere was required to obtain and provide payment and performance bonds for various projects to guarantee DeVere's performance obligations under the bonded contracts and to secure DeVere's payment obligations to its subcontractors and materialmen, subject to the terms of the bonds, contracts, and governing law. Pursuant to and at the request of DeVere, in exchange for DeVere and others indemnifying Liberty, Liberty issued surety credit to DeVere. Namely, Liberty issued the payment and performance bonds on behalf of DeVere as follows:

| Bond No. | Project | Principal | Obligee | Penal Sum |
|----------|---------|-----------|---------|-----------|
| 013124963 | NCDOT C203044 Bridge #156 Over CSX Railroad | DeVere | NCDOT | $1,897,666.00 |
| 013023593 | US-221 SC Line to S. of Floyd's Creek | DeVere | NCDOT | $35,855,177.00 |
| 13124066 | US-221 S. of Floyd's Creek to N. of US-74 Bypass | DeVere | NCDOT | $30,438,069.00 |
| 013124115 | Sanford Bypass | DeVere | NCDOT | $30,181,609.00 |
| 013124193 | Rolesville Bypass | DeVere | NCDOT | $24,956,387.67 |
| 013125048 | NCDOT C202847 Bridge #36 on I-95 (Robeson) | DeVere | NCDOT | $12,662,052.06 |

2

| 013125079 | NCDOT C202880 Bridges #235 & #238 (Buncombe Co) | DeVere | NCDOT | $11,947,609.00 |
|---|---|---|---|---|
| 013125344 | NCDOT C203133 Jackson Co NC-116 to NC-107 | DeVere | NCDOT | $15,939,043.11 |
| 013125523 | NCDOT C202824 Mecklenburg Co. Independence Blvd. | DeVere | NCDOT | $51,669,284.58 |
| 013126077 | NCDOT DN00178 Bridge #251 & #253 Jackson Co. | DeVere | NCDOT | $990,087.25 |
| 013126113 | NCDOT C202573 Wake Co. Bridge Over Beaver Creek | DeVere | NCDOT | $3,927,599.41 |
| 013126115 | NCDOT C203347 Bridge #42 - Saconon Creek | DeVere | NCDOT | $1,024,949.25 |
| 013126237 | C203284 Bridges #147 & 140 Over Mallard Creek | DeVere | NCDOT | $4,393,837.25 |
| 013125247 | City of Raleigh - Northeast Remote Ops Facility | DeVere | City of Raleigh | $17,193,000.00 |
| 013125226 | Bridge #69 over CCSXRailroad on SR-1576 | DeVere | NCDOT | $1,288,600.80 |
| 013126083 | Wilkes Bridge 302 Reddies River - C203303 | DeVere | NCDOT | $972,073.18 |
| 013126084 | Catawba Bridge 83 - C203299 | DeVere | NCDOT | $894,893.81 |
| 013124100 | Falls of Nuese Phase II Roadway | DeVere | NCDOT | $6,516,956.00 |
| 013125404 | NCDOT C202842 Henderson Co. Bridges #75 & #76 | DeVere | NCDOT | $1,317,685.00 |
| 013125200 | Richmond County US 220 Bypass Waterline | DeVere | Richmond County | $3,722,258.00 |
| 013124632 | East Yancy - WWTP Improvements | DeVere | East Yancey Water and Sewer District | $2,755,505.00 |
| 013124656 | Union County East Side Sewer System Imp | DeVere | Union County | $7,222,781.00 |
| 013125400 | Fayetteville Annex. Ph V, Shenandoah Subdivision | DeVere | City of Fayetteville | $ 2,712,339.00 |
| 013125412 | Henderson Water Reclamation Faciltiy Imp. | DeVere | City of Henderson | $15,519,000.00 |

3

| | | | | |
|---|---|---|---|---|
| 013125893 | Chestnut Parkway Phase 1B - Indian Trail | DeVere | Town of Indian Trail | $1,415,527.00 |
| 013125966 | Lynwood Lakes Water & Sewer Improvements | DeVere | City of Greensboro | $10,768,026.00 |
| 013125978 | Leesville Road Widening PW 2011-05 | DeVere | City of Raleigh | $5,561,233.00 |
| 13125845 | Albemarle Water Transmission Line | DeVere | City of Concord | $17,816,599.00 |
| 013125239 | Mingo Creek Greenway Trail EB-5002B | DeVere | NCDOT | $2,496,386.00 |
| 013125733 | Millennium One | DeVere | UNCC Millennium LLC | $28,675,182.00 |
| 013126261 | Highland Creek Relief School - Sitework | DeVere | Clancy & Theys Construction Co. | $2,019,882.00 |
| 013125877 | Westgate Dev./Parkwood Place Subdivision | DeVere | Westgate Development, Inc. | $2,200,000.00 |
| 013125402 | SRPP-2522-24 N. Tonti Street-Reconstruction | DeVere | Louise Leflore and State of Louisiana | $276,510.00 |
| 013124673 | War Memorial Connector | DeVere | War Memorial Hospital | $2,876,766.00 |
| 013125553 | War Memorial Emergency Dept | DeVere | War Memorial Hospital | $4,560,469.00 |
| 013125544 | Cypress Grove Homes of Warren | DeVere | CGH of Warren AR 2011, L.P. | $4,144,875.00 |
| 013125690 | Cypress Grove Homes of McGehee | DeVere | CGH of McGeHee AR 2011, L.P. | $3,880,500.00 |
| 013125547 | Cypress Grove Homes of Lake Village | DeVere | CGH of Lake Village AR 2011, L.P. | $4,049,400.00 |
| 013126253 | Mackinac Straits Hospital & Health Ctrr Surgery Suite | DeVere | Mackinaw Straits Health Systems, Inc. | $1,734,835.00 |
| 013126454 | Bay River Medical | DeVere | 4C's Acquisitions, Inc | $3,442,200.00 |
| 013126255 | Alpena Comm. College Electrical Power Tech. Center | DeVere | Alpena Community College | $3,461,954.00 |
| 013126228 | Marquette General-Accessibility & Finishes Upgrade | DeVere | DLP Marquette General Hospital, LLC | $330,035.00 |

4

| 013125944 | ARMC Fire Alarm Systems Replacement Project | DeVere | Alpena Regional Med. Center | $532,839.00 |
|---|---|---|---|---|
| 013125951 | ARMC Emergency Department Phases 1-5 | DeVere | Alpena Regional Med. Center | $3,942,641.00 |
| 013126448 | Emmet County Transfer Station | DeVere | EMMET COUNTY | $838,000.00 |
| 013126390 | M00216; IBA-US Toll Plaza Redevelopment | DeVere | MDOT | $8,889,575.00 |
| 013126114 | Alexander Co Bridge C203353 | DeVere | NCDOT | $419,832.80 |
| 013123936 | Unity Village | DeVere | Unity Village | $987,000.00 |
| 013124841 | New 0.40 MGD Wastewater Treatment Plant, 516 Village Rd. Leland, NC 28541 | DeVere | Bruswick Regional Water and Sewer H2GO | $4,106,000.00 |

The above-referenced bonds are herein collectively referred to as the "Bonds." The above-referenced obligees are herein collectively referred to as "Obligees" and/or "Owners." DeVere's contracts with the Obligees for each of the Projects above are herein collectively referred to as the "Bonded Contracts." The aforementioned projects shall be collectively referred to herein as the "Bonded Projects".

**The Indemnity Agreement**

7.     As one of the conditions for Liberty's issuance of the Bonds on behalf of DeVere, Liberty required that DeVere and other individual and corporate indemnitors (collectively, the "Indemnitors") enter into a general agreement of indemnity.

8.     On or about March 14, 1995, a General Agreement of Indemnity was executed by DeVere and other Indemnitors ("1995 GAI"). A copy of the 1995 GAI is attached hereto as Exhibit A.

9.     On or about July 29, 2010, DeVere and other Indemnitors executed a second General Agreement of Indemnity in favor of Liberty, as surety ("Indemnity Agreement").[1] A true and correct copy of the Indemnity Agreement is attached hereto as <u>Exhibit B</u>.

10.    In addition to common law rights, pursuant to the terms of the Indemnity Agreement, Liberty maintains an express interest in DeVere's receivables from the Bonded Contracts which are to be held in trust by DeVere to protect Liberty from loss and to ensure satisfaction of DeVere's bonded performance and payment obligations. The Indemnity Agreement provides, in relevant part:

> To the extent permitted under applicable law, the Indemnitors and Principals covenant and agree that all of their interest, title and rights in any contract or undertaking referred to in any Bond, or in, or growing in any manner out of any Bond, including but not limited to payments for or on account of any contract, shall be held as a trust fund and/or as a constructive or equitable trust in which the Surety has an interest, and shall inure to the benefit of the Surety for any liability or loss it may have to sustain under any Bond including but not limited to the payment of obligations incurred in the performance of any contract and for labor, materials, and services furnished in the prosecution of the work provided in any contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract covered by any Bond are trust funds, whether in the possession of the Indemnitors or Principals or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract for which the Surety would be liable under any Bond; said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any Bond, under this Agreement, or under any Other Agreements, and this Agreement constitutes notice of such trust.

<u>Ex. B</u>, ¶ 11.

---

[1] Subsequent amendments to the Indemnity Agreement were executed to add additional indemnitors, but did not modify or impact general terms of the Indemnity Agreement.

11.     The Indemnity Agreement also provides as follows:

> The Indemnitors hereby assign, transfer, pledge and convey to the Surety and agree to use their best efforts to cause the Principals to assign, transfer, pledge and convey to the Surety as collateral security for the full performance of the covenants and agreements herein contained, contained in Other Agreements and for the payment of any other indebtedness or liability of the Indemnitors and/or Principals to the Surety, whether heretofore or hereafter incurred, the assignment in the case of each contract being effective as of the date of the Bond covering such contract, the following: (a) all the right, title and interest of the Indemnitors and/or Principals in, and growing in any manner our of all contract referred to in the Bonds, or in or growing in any manner out of the Bonds; (b) all the right, title and interest of the Indemnitors and/or principals in and to all machinery, supplies, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all contractual work referred to in the Bonds or elsewhere…

Ex. B, ¶ 3.

### December 2015 Memorandum of Understanding

12.     On or about December 23, 2015, following DeVere's request for funding and an additional extension of surety credit by Liberty, DeVere and the other indemnitors reaffirmed their contractual obligations under the Indemnity Agreement in a Memorandum of Understanding. A true and correct copy of the Memorandum of Understanding is attached hereto as Exhibit C.

13.     DeVere and the indemnitors agreed, in relevant part, as follows:

> Indemnitors acknowledge and hereby reaffirm their assignment, transfer, and conveyance to Liberty of: (a) all monies due or to become due to Indemnitors under or as a result of any contract covered by any Bond, including, but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work and proceeds of damage claims; (b) all right, title and interest of Indemnitors in and to all supplies, tools, plant, equipment and materials of every nature and description that may now or hereafter be in, on or around the site of, or the work under, the contract covered by any Bond, and materials purchased or

7

ordered for the performance of any Boned Contract wheter in the process of construction, in transit to the site, or in storage elsewhere…The foregoing assignment was effective as of the date of the Indemnitors' execution of the Indemnity Agreement. The assignment herein is subject to any prior existing lien superior to Liberty's rights in the assignment property and interests…

Ex. C, pg. 4.

14.     DeVere and the Indemnitors again agreed that any funds received from Liberty through financing would be trust funds pursuant to the Indemnity Agreement. The MOU provides, in relevant part, as follows:

Indemnitors hereby acknowledge and reaffirm their obligations under the Indemnity Agreement. Indemnitors expressly acknowledge that any funds received by Liberty pursuant to the Indemnity Agreement, this Request for Financial Assistance, and/or a letter of direction, are trust funds pursuant to and as contemplated by Paragraph Eleventh Trust Fund of the Indemnity Agreement. All sums paid on the account of the Indemnitors or otherwise, less any amounts received by Liberty on account of money due, or to become due on the Bonded Projects or liquidation of pledged initial collateral shall conclusively be deemed a loss covered under the Indemnity Agreement. Nothing contained herein will constitute a waiver of limitation of said obligations.

Ex. C, pg. 3.

**Bond Claims and DeVere's Defaults on the Projects**

15.     Subsequent to the issuance of the Bonds, DeVere defaulted on numerous projects bonded by Liberty, and Liberty received claims on the Bonds from Obligees and various subcontractors, suppliers and materialmen alleging that DeVere breached its performance and/or payment obligations on the bonded Projects (the "Bond Claims").

16.     Specifically, Liberty received Bond Claims from the following project Owners alleging DeVere's failure to perform and complete its Bonded Contracts, including contract, punch list and warranty work on said Bonded Contracts:

8

| Bond No. | Project Name | Obligee |
|---|---|---|
| 013023593 | US-221 SC Line to S. of Floyd's Creek | NCDOT |
| 13124066 | US-221 S. of Floyd's Creek to N. of US-74 Bypass | NCDOT |
| 013124115 | Sanford Bypass | NCDOT |
| 013124193 | Rolesville Bypass | NCDOT |
| 013125048 | NCDOT C202847 Bridge #36 on I-95 (Robeson) | NCDOT |
| 013125079 | NCDOT C202880 Bridges #235 & #238 (Buncombe Co) | NCDOT |
| 013125344 | NCDOT C203133 Jackson Co NC-116 to NC-107 | NCDOT |
| 013125523 | NCDOT C202824 Mecklenburg Co. Independence Blvd. | NCDOT |
| 013126237 | C203284 Bridges #147 & 140 Over Mallard Creek | NCDOT |
| 013125247 | City of Raleigh - Northeast Remote Ops Facility | City of Raliegh |
| 013124656 | Union County East Side Sewer System Imp | Union County |
| 013125400 | Fayetteville Annex. Ph V, Shenandoah Subdivision | City of Fayetteville |
| 013125412 | Henderson Water Reclamation Faciltiy Imp. | City of Henderson |
| 013125966 | Lynwood Lakes Water & Sewer Improvements | City of Greensboro |
| 013125978 | Leesville Road Widening PW 2011-05 | City of Raleigh |
| 13125845 | Albemarle Water Transmission Line | City of Concord |
| 013126261 | Highland Creek Relief School - Sitework | Clancy & Theys Construction Co. |
| 013125877 | Westgate Dev./Parkwood Place Subdivision | Westgate Development, Inc. |
| 013125544 | Cypress Grove Homes of Warren | CGH of Warren AR 2011, L.P. |
| 013125690 | Cypress Grove Homes of McGehee | CGH of McGeHee AR 2011, L.P. |
| 013125547 | Cypress Grove Homes of Lake Village | CGH of Lake Village AR 2011, L.P. |
| 013126454 | Bay River Medical | 4C's Acquisitions, Inc |
| 013126390 | M00216; IBA-US Toll Plaza Redevelopment | MDOT |

Case 5:17-cv-00082-BO   Document 1   Filed 02/15/17   Page 9 of 22

| 13124841 | New 0.40 MGD Wastewater Treatment Plant, 516 Village Rd. Leland, NC 28541 | Bruswick Regional Water and Sewer H2GO |
|---|---|---|

("Performance Bond Claim Projects").

17.    In order to discharge Liberty's obligations under each of the Bonds, Liberty entered into contracts with the Owners (the "Surety/Owner Agreements") whereby Liberty arranged for completion of DeVere's obligations under its respective Bonded Contracts. Pursuant to the Surety/Owner Agreements, the public or private funds held by each Owner are earmarked and pledged by each Owner to Liberty for the completion of each respective Contract for the payment of subcontractors, suppliers, and materialmen.

18.    Liberty has also received numerous claims and lawsuits on the Payment Bonds from various subcontractors, suppliers and materialmen wherein each claimant has alleged that DeVere breached its payment obligations ("Payment Bond Claims").

19.    In order to discharge its obligations under the Bonds, Liberty has investigated, settled and resolved many Payment Bond Claims and several of the Payment Bond Claims remain pending subject to further investigation, negotiation and/or litigation.

20.    Liberty continuously notified the Indemnitors of the claims against the Bonds and demanded that they post collateral and indemnify Liberty from current losses, pursuant to the terms of the Indemnity Agreement. The Indemnitors failed to post collateral and failed to indemnify Liberty.

21.    Pursuant to its obligations under the Bonds and law, Liberty has fully discharged or is in the process of discharging DeVere's legal obligations owed to the Obligees and subcontractors, suppliers and materialmen under the terms of the Bonds, Bonded Contracts and law.

**Indemnity Lawsuit**

22.     On February 5, 2016, Liberty filed a lawsuit in the United States District Court for the Eastern District of Michigan, entitled *Liberty Mutual Insurance Company v. DeVere Construction Co., Inc., et al.,* Case No. 16-CV-10421, seeking among other things, relief and enforcement of terms the Indemnity Agreement, including the Indemnitors' posting of collateral security to protect Liberty from losses as a result of the numerous Bond Claims.

23.     On April 14, 2016, the District Court entered an Order directing, among other things, that Liberty, DeVere and the other Indemnitors execute a joint defense agreement that provides in part, that Liberty owns and shall pursue affirmative claims and that the Indemnitors cooperate with Liberty to provide documentation and testimony to support the affirmative claims ("April 2016 Order").

24.     On June 15, 2016, upon motion by Liberty for preliminary injunction against the indemnitors, the District Court granted Liberty's Motion, and ordered, among other things, that the indemnitors post collateral in the amount of $12,500,000. The Court determined that Liberty was entitled to collateral security as provided in the Indemnity Agreement in order for Liberty to avoid using its own capital to cover payment gaps between payables and receivables related to the Contracts. After the indemnitors failed to post collateral, the Court entered an order imposing sanctions accruing in the amount of $2,500 per day until the Indemnitors post the ordered collateral. To date, the indemnitors have not posted said collateral.

25.     Several of the Indemnitors subsequently filed separate petitions for bankruptcy under Chapter 7 of the Bankruptcy Code, in the Eastern District of Michigan, which are currently pending.

26.     Consistent with the terms of the Indemnity Agreement, MOU, and the District Court's April 2016 Order, Liberty has pursued certain affirmative claims on the Bonded Projects relating to and regarding certain modifications to and/or damages arising out of the performance of the Bonded Contracts ("Affirmative Claims").

### First NBC's Claims

27.     First NBC alleges that DeVere executed promissory notes and security agreements in favor of First NBC under which DeVere has defaulted.

28.     On information and belief, First NBC has contacted numerous Obligees of the Bonded Contracts, alleging that First NBC has a superior and prior security interest in any receivables on the Bonded Projects.

29.     First NBC has interfered with Liberty's contracts with certain Obligees on the Bonded Contracts, First NBC has attempted to obtain and/or attach certain bonded receivables on Bonded Contracts, and First NBC has interfered with Liberty's pursuit of Affirmative Claims.

### Liberty's Damages

30.     As of December 2016, Liberty has incurred a net loss of $23,274,628 in discharging Liberty's and DeVere's legal obligations under the terms of the Bonded Contracts, the Bonds, and governing law.

31.     Liberty has incurred losses on all Bonded Contracts.

32.     Liberty continues to incur direct losses on the Bonded Contracts, and Liberty will continue to face exposure for potential and future warranty obligations and claims under the terms of the Bonds and Bonded Contracts.

12

**COUNT I**
**Liberty Has A Priority to the Bonded Contract Funds Over First NBC**
**Pursuant to the Doctrine of Equitable Subrogation**

33.     Liberty restates and re-alleges Paragraphs 1 through 32 as if fully set forth herein.

34.     DeVere, as principal under the Bonds, was contractually obligated to perform its work under the Bonded Projects and was also obligated to pay the subcontractors who had furnished labor and/or materials to the Bonded Projects.

35.     On or around 2015, DeVere experienced financial difficulties and began defaulting on the Bonded Contracts. Liberty received the numerous Performance Bond Claims from the Obligees claiming that DeVere failed to perform and/or complete its work in accordance with the relevant Bonded Contracts.

36.     In addition to DeVere's unfinished work on the Bonded Contracts, DeVere was unable to and failed to pay its subcontractors who supplied labor and/or materials on the Bonded Projects. As a result, DeVere defaulted on its legal obligation to pay numerous subcontractors and materialmen for the Bonded Projects.

37.     Liberty received the Payment Bond Claims from the unpaid subcontractors on the Bonded Projects and paid Claims to the subcontractors whom DeVere failed to pay for the labor and materials they furnished to the Bonded Projects. Liberty did not pay the Payment Bond Claims as a volunteer, but rather, it paid them pursuant to its obligations under the Bonds and/or applicable Bond Acts in order to protect its own interests.

38.     Upon DeVere's default, DeVere demobilized the Performance Bond Claim Project sites and abandoned those Projects.

39.     As a result of DeVere's default on the Bonded Contracts, pursuant to its obligations under the Bonds, Liberty undertook DeVere's performance and payment obligations

13

under the Bonded Contracts. Upon Liberty's undertaking, DeVere forfeited any rights it had to the Bonded Contract receivables, and Liberty obtained such rights by virtue of its performance of the Bonded Contracts and payment to DeVere's subcontractors on the Bonded Projects.

40.     Equitable subrogation arises from (i) the existence of DeVere's obligations under the Bonded Contracts to each Owner, (ii) DeVere's failure to perform its obligations under the Bonded Contracts, (iii) the rights of each Owner arising from DeVere's failure to perform, and (iv) Liberty's performance and completion of the Bonded Contract obligations that DeVere failed to perform.

41.     Liberty, as the surety performing on behalf of DeVere, was and is subrogated to the rights of three parties: (1) its principal, DeVere, (2) the subcontractors and suppliers that Liberty has paid on the Bonded Projects, and (3) the Bonded Project Owners.

42.     DeVere has not asserted any defenses to the Claims of the Owners of the Performance Bond Claim Projects regarding Liberty's obligations to complete the abandoned work of DeVere under the Bonded Contracts and Liberty discharged its legal obligations to each Owner under the Bonded Contracts by arranging for completion of each Bonded Contract.

43.     DeVere also has not asserted any defenses to the Payment Bond Claims its subcontractors made to Liberty in connection with DeVere's default, and Liberty discharged its legal obligations to DeVere's subcontractors by paying said subcontractors' timely and valid Bond Claims.

44.     As of December 2016, Liberty has incurred costs in discharging its obligations under the Bonds for a total net loss of $23,274,628. Liberty made the aforementioned payments and has continued to make payments in order to discharge its legal obligations under the Bonds. The Bond Claimants should have been paid with the Bonded Contract funds disbursed by the

14

each of the Project Owners to DeVere. However, such monies were instead wrongfully used by DeVere for other purposes not related to the Bonded Projects and the Bonded Contract funds are insufficient to pay all of the Payment Bond Claims and for the completion of DeVere's incomplete work.

45.     Additionally, DeVere breached the Bonded Contracts by failing to complete its work and abandoning its performance under each of the Bonded Contracts.

46.     After Liberty paid the aforementioned claims against the Bonds as legally required by the Bonds, by operation of law, Liberty was subrogated to the rights of the subcontractors, DeVere, and the Bonded Project Owners.

47.     By virtue of Liberty's rights as subrogee and assignee to the rights of DeVere, the Project Owners, and the subcontractors who were legally and beneficially entitled to the Bonded Contract funds, Liberty has a priority right to the Bonded Contract funds over First NBC.

48.     By virtue of equitable subrogation, Liberty as the performing surety on behalf of DeVere, stepped into the shoes of the Owner for each of the Bonded Projects, and said funds now belong to each Owner to use to complete the Bonded Projects and to pay DeVere's subcontractors. The Owner has a common law right of setoff to the Bonded Projects.

49.     Liberty's performance of the Bonded Projects and payment of Bond Claims on behalf of DeVere in accordance with its obligations under the Bonds, created an equitable lien on any and all Bonded Contract receivables, superior to the rights of any secured creditor, including First NBC.

50.     The Uniform Commercial Code and any UCC1 liens held by First NBC are irrelevant and inferior to Liberty's interests to the Bonded Contract funds because no funds were

owed to DeVere upon its default under the Bonded Contracts, and therefore, UCC1 liens did not attach to those receivables.

51.     If the Bonded Contract funds are not held for the use and benefit of Liberty on the Bonded Projects, not only will Liberty continue to incur substantial losses in completing the Bonded Projects, but will also be forced to continue utilizing its own funds to pay for its performance and to pay the various subcontractors under the Bonded Projects.

WHEREFORE, Plaintiff, Liberty Mutual Insurance Company, prays that this Honorable Court enter an order granting the following relief:

      a.  Declaring that Liberty has a first priority right to all right, title, interest, in any and all Bonded Contract funds;

      b.  Declare that Liberty's right, title, interest, in all of the Bonded Contract funds is superior to any interest claimed by First NBC on the receivables under DeVere's Bonded Contracts;

      c.  That First NBC be restrained from receiving any Bonded Contract funds;

      d.  And for such other relief as this Court deem equitable and just.

## Count II
### Liberty Has A Priority to the Bonded Contract Funds Pursuant to the Surety/Owner Agreements

52.     Liberty restates and re-alleges Paragraphs 1 through 51 as if fully set forth herein.

53.     Upon DeVere's default under the Bonded Contracts, Liberty and the Bonded Project Owners entered into various Surety/Owner Agreements, whereby Liberty agreed, among other things, to undertake performance of DeVere's obligations under the Bonded Contracts, including the completion of remaining work on the Bonded Projects and/or making payments to

Project Owners for completion of the Bonded Projects, in order to discharge its obligations under the Bonds.

54.     Pursuant to the terms of the various Surety/Owner Agreements, Liberty was and is entitled to all rights, title, and interest of DeVere in and to each of the Bonded Contracts in all respects as if Liberty were the original party to the Bonded Contract.

55.     In addition, under the Surety/Owner Agreements, Liberty assumed the full responsibility to each Project Owner for the obligations originally undertaken by DeVere and not performed by DeVere under the Bonded Contracts, including all remaining work on the Bonded Projects.

56.     The Surety/Owner Agreements also provide that the Bonded Contract balances are payable to Liberty directly for completion of each Bonded Contract. Particularly, the Surety/Owner Agreements provide that all Bonded Contract funds are to be unconditionally made to Liberty, and expressly prohibit the Owners from offsetting any Bonded Contract funds for claims asserted by other creditors of DeVere.

57.     Pursuant to Liberty's equitable subrogation rights, the Surety/Owner Agreements, the express terms of the Indemnity Agreement, the MOU, Liberty's interest in Bonded Contract funds supersedes any and all rights and priorities of other creditors including First NBC, to those receivables.

WHEREFORE, Plaintiff, Liberty Mutual Insurance Company, prays that this Honorable Court enter an order granting the following relief:

        a.   Declaring that Liberty has a first priority right to all right, title, interest, in any and all Bonded Contract funds;

b. Declare that Liberty's right, title, interest, in all of the Bonded Contract funds is superior to any interest claimed by First NBC on the receivables under DeVere's Bonded Contracts;

c. That First NBC be restrained from receiving any Bonded Contract funds;

d. And for such other relief as this Court deem just and proper.

## COUNT III
### Liberty Has A Priority to All Contracts With the Same Owner Pursuant to Liberty's Request that the Common Owner Exercise Its Equitable Right of Set Off

58. Liberty restates and re-alleges Paragraphs 1 through 57 as if fully set forth herein.

59. Liberty is equitably subrogated to the rights of the Owners and to the rights of DeVere's subcontractors for which Liberty satisfied the aforementioned Claims.

60. Liberty is subrogated to two distinct rights of each Owner of the Bonded Projects: (1) the Owner's right to pay DeVere's subcontractors, and (2) the Owner's right to apply the cost of completion to the contract balances to the Owner's right to pay DeVere's subcontractors.

61. Upon DeVere's default on the Bonded Contracts, DeVere forfeited the right to receive payment from the each respective Owner of the Bonded Projects.

62. In addition, upon DeVere's default, each Owner was entitled to use DeVere's funds to pay DeVere's subcontractors and to complete performance of the Bonded Projects.

63. Upon DeVere's default under the Bonded Contracts, each Owner is entitled to apply setoff for mutual or common contracts and/or debts it has with DeVere.

64. Liberty, as the performing surety, acquired each Owner's rights to Bonded Contract funds, as well as each Owner's right to either common law or contractual setoff rights. In doing so, none of the Bonded Contract funds are due to DeVere, and, therefore, none of the Bonded Contract funds are subject to any UCC liens, including that of First NBC.

18

65. Many of the Bonded Contracts include common contracts between DeVere and NCDOT ("Common Contracts").

66. As of November 2016, the total projected amount for the remaining Common Contract balances was $25,512,939.20, subject to adjustments per the terms of the governing contracts. In addition, the remaining Common Contract balances are subject to reduction on the account of $6,203,705.53 anticipated in liquidated damages against DeVere, as of November 2016. Further, as of November 2016, the estimated total cost to complete work under the Common Contracts was $22,597,433.21. As the Common Contracts are performed and progress, these numbers are subject to change in accordance with the terms of the governing contracts.

67. As of December 2016, Liberty incurred a net loss of $23,274,628 to discharge its Bond obligations pursuant Payment and Performance Bond Claims it received for the Bonded Projects. Of that amount, Liberty paid $17,782,319.90 to discharge its Bond obligations in connection with the Common Contracts as of December 2016. Liberty continues to incur additional loss as a result of Payment and Performance Bond Claims since December 2016.

68. Liberty's losses on all Bonded Contracts, including the Common Contracts, continues to increase. Not all of the Payment Bond Claims have yet been resolved and there remain Bonded Projects that have not yet been completed. Liberty's investigation and resolution of Payment Bond Claims remains ongoing as does Liberty's performance of work and negotiation with Owners in connection with the Performance Bond Claims.

69. As the performing surety, Liberty made a written demand to NCDOT that NCDOT exercise and/or assign to Liberty its right of setoff that NCDOT has as Owner against DeVere on contracts between NCDOT and DeVere, in order to offset the losses Liberty has incurred on the Common Contracts.

70.     Liberty intends to hold and use all contract funds it has been paid from NCDOT to discharge its obligations under the Bonds and to reimburse itself for the losses it has incurred in discharging its obligations under the Bonds in connection with the Common Contracts.

WHEREFORE, Plaintiff, Liberty Mutual Insurance Company, prays that this Honorable Court enter an order granting the following relief:

a.  Declaring that Liberty is entitled to apply the Owner's right of setoff under the Common Contracts;

b.  Declaring that Liberty has a first priority right to all right, title, interest, in any and all Bonded Contract funds;

c.  Declare that Liberty's right, title, interest, in all of the Bonded Contract funds is superior to any interest claimed by First NBC on the receivables under DeVere's Bonded Contracts;

d.  That First NBC be restrained from receiving any Bonded Contract funds;

e.  And for such other relief as this Court deem just and proper.

## COUNT IV
### For Bonded Contracts Which Liberty Has Not Received Claims Said Contract Funds Must Be Set Aside Until Liberty is Discharged Under its Bond's or Upon Expiration of DeVere's Warranty Obligations

71.     Liberty restates and re-alleges Paragraphs 1 through 70 as if fully set forth herein.

72.     Liberty continues to perform and arrange for completion of some of the Bonded Projects on behalf of DeVere, some of which Liberty has not received any claims and/or paid any Bond Claims at this time.

73.     The Bonded Contracts also included warranty obligations by DeVere for a period after completion of the Bonded Projects for certain workmanship issues relating to DeVere's work that may arise during a limited period after completion of the Project.

74.    The warranty period has not yet expired on certain Bonded Projects that have been completed to date, and therefore, any Bonded Contract funds relating to those Projects should be set aside until the completion of each Bonded Project and until the expiration of the warranty period for each Bonded Project.

75.    Pursuant to Liberty's aforementioned equitable subrogation rights, the Surety/Owner Agreements, the express terms of the Indemnity Agreement, and the MOU, Liberty's interest in Bonded Contract funds supersedes any and all rights and priorities of other creditors, including First NBC, to those receivables. Therefore, Bonded Contract funds on all pending Projects, even where no Claims have been asserted, must be set aside until Liberty's obligations are fully discharged under each Bonded Project, up to and including the expiration of the warranty period for the Bonded Projects.

WHEREFORE, Plaintiff, Liberty Mutual Insurance Company, prays that this Honorable Court enter an order granting the following relief:

a.    Declaring that Liberty has a first priority right to all right, title, interest, in any and all Bonded Contract funds;

b.    Declare that all Bonded Contract funds for any and all pending Bonded Projects be set aside for the use and benefit of Liberty until it is completely discharged of its Bond obligations, up to and including through the expiration of the warranty period for each Bonded Project;

c.    Declare that Liberty's right, title, interest, in all of the Bonded Contract funds is superior to any interest claimed by First NBC on the receivables under DeVere's Bonded Contracts;

d.    That First NBC be restrained from receiving any Bonded Contract funds;

e. And for such other relief as this Court deem just and proper.


Dated: February 15, 2017



Respectfully Submitted:

LIBERTY MUTUAL INSURANCE COMPANY


By: /s/ Albert L. Chollet, III

Albert L. Chollet, III
Ill. State Bar Number: 6292557
John Sebastian
Ill. State Bar Number: 6230240
Erica Del Aguila
Ill. State Bar Number: 6312642
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
10 South Wacker Drive, Suite 2935
Chicago, Illinois 60606
Ph: (312) 219-6900
achollet@watttieder.com
jsebastian@watttieder.com
edelaguila@watttieder.com


By: /s/ Paul E. Davis

Paul E. Davis
Conner Gwyn Schenck PLLC
3141 John Humphries Wynd., Suite 100
Raleigh, NC 27612
Ph: (919) 789-9242
Fax: (919) 789-9210
pdavis@cgspllc.com
N.C. State Bar Number: 12379

Local Civil Rule 83.1 Counsel