UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-82-BO

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, ) ) Plaintiff, ) ) v. ) ) SBN V FNBC LLC, ) ) Defendant. ) | O R D E R |

This matter is before the Court on the parties' motions for partial summary judgment. [DE 43, 47]. Both motions have been fully briefed and are ripe for disposition. For the reasons that follow, defendant's motion for partial summary judgment [DE 43] is GRANTED and plaintiff's motion for partial summary judgment [DE 47] is DENIED.

BACKGROUND

Plaintiff, Liberty Mutual Insurance Company ("Liberty Mutual"), issued 48 performance and payment bonds on behalf of DeVere Construction Company, Inc. ("DeVere"). [DE 50-1, ¶ 4]. All of these bonds were issued in connection with various public and private construction projects in North Carolina, Michigan, Arkansas, and Louisiana. *Id.* The bonds secured DeVere's performance of the bonded contracts and DeVere's obligation to pay subcontractors and suppliers for work performed. *Id.* The bonds also included an indemnity provision assigning to Liberty Mutual all of DeVere's rights and interests in the proceeds of the bonded contracts. *Id.* ¶¶ 5–8.

In order to finance the construction projects, DeVere also obtained loans from First NBC Bank ("First NBC"). [DE 46, Ex. A ¶ 4]. To secure these loans, DeVere granted First NBC a security interest in its accounts receivable and other general intangibles. *Id.* ¶ 6. First NBC

perfected its security interest in the accounts receivable and general intangibles in an April 2011 UCC-1 filing with the Michigan Department of State, and the filing was continued in February 2016. [DE 46-1, Ex. A ¶ 6; Ex. 2].

In 2015, DeVere defaulted on both the bonded projects and the First NBC loans. [DE 46-1, Ex. A ¶ 7; 50-1, ¶ 9]. DeVere abandoned the bonded projects, forcing Liberty Mutual to step in and complete performance, pay subcontractors and suppliers, and otherwise fulfill DeVere's obligations. [DE 50-1, ¶¶ 10–13]. In 2016, Liberty Mutual brought suit against DeVere in federal court in the Eastern District of Michigan, seeking relief under the terms of the indemnity agreements for losses that Liberty Mutual incurred under the bonds. *Id.* ¶ 14. In February 2017, the district court entered judgment in Liberty Mutual's favor, against DeVere and other indemnitors, for $23,274,628, subject to modification for future losses under the bonds. *Id.* Liberty Mutual continues to have obligations under the bonds and has contingent liability for claims that have not yet been discharged. *Id.* ¶ 19.

Meanwhile, First NBC was closed in April 2017 and the Federal Deposit Insurance Corporation (FDIC) was named receiver. [DE 46-1, Ex. A ¶ 8]. Defendant, SBN V FNBC LLC ("SBN"), entered into a loan sale agreement in October 2017 and purchased a pool of loans from the FDIC that included the loans First NBC had made to DeVere. *Id.* ¶¶ 3–4. As the successor-in-interest to First NBC, SBN holds a perfected security interest in DeVere's accounts receivable and other general intangibles. *Id.* ¶¶ 9–10. As of November 2018, the amount outstanding and due to SBN on the loans was $14,089,911.42. *Id.* ¶ 11.

While Liberty Mutual has incurred a net loss on most of the bonded projects, totaling at least $32,622,491.52 in losses, on five of the bonded projects, receivables exceed the costs and expenses that Liberty Mutual incurred. [DE 50-1, ¶ 16]. It is these excess receivables that are

2

central to the parties' dispute on summary judgment. The total amount of these excess receivables is $865,537.05. *Id.*

In February 2017, Liberty Mutual initiated this action against First NBC, seeking a declaratory judgment that it has a priority interest in all bonded contract receivables and funds to the extent of its net losses. [DE 1]. SBN was substituted as defendant and counterclaimant upon purchasing the First NBC loans and alleges that SBN's perfected security interest entitles them to the excess receivables. [DE 9, 36].

In November 2018, the parties moved for partial summary judgment. Liberty Mutual argues that it is entitled to offset its losses using the excess receivables because, as surety, it is equitably subrogated to the rights of the project owners and can assert a set-off on behalf of those owners. [DE 48]. SBN contends that its perfected security interest entitles it to the excess receivables and that Liberty Mutual is not entitled to a set-off. [DE 44].

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). In determining whether a genuine issue of material fact exists, a court must view the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there

3

must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). And "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in original). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

At the outset, the Court is persuaded that there are no genuine issues of material fact such that summary judgment is not appropriate. At this stage, the dispute between the parties on the issue of priority is purely legal. Liberty Mutual makes no objection to SBN's statement of undisputed facts. Although SBN raises a few objections to certain characterizations in Liberty Mutual's statement of undisputed facts, it concedes that the disputed paragraphs do not "create any genuine issues of material fact relevant to disposition of the motions." [DE 52, p. 4]. Thus, partial summary judgment is appropriate.

The parties helpfully divide the bonded projects into a few categories. First, there are those projects on which Liberty Mutual has incurred a loss. This category includes the majority of the bonded projects. SBN does not challenge Liberty Mutual's priority to the receivables and contract funds on these projects. The five projects with excess receivables are divided into the second and third category. The second category includes projects with unique owners, in the sense that each owner has only one bonded project obligation. This category includes projects that DeVere undertook for the Town of Indian Trail and Clancy & Theys Construction Company. Liberty Mutual concedes that it "has not incurred a net loss" on the Indian Trail and Clancy & Theys projects and "neither is subject to a common-obligee right of set off," so it "does not request summary judgment for the surplus proceeds to those two projects." [DE 55, p. 2]. The third

4

category includes the three surplus projects with common owners: the North Carolina Department of Transportation (NCDOT) and the City of Raleigh. That is, these two owners had multiple bonded projects with DeVere and Liberty Mutual incurred a net loss on some of those other projects. The fourth and final category includes the contingent liability projects, where Liberty Mutual has not yet been forced to perform and there are no available receivables. SBN requests judgment that it enjoys priority in any potential excess receivables on these projects, while Liberty Mutual does not request that the Court render judgment with regard to these projects at this time.

The third category of projects—two undertaken on behalf of the NCDOT, one on behalf of the City of Raleigh—forms the crux of this dispute. SBN argues that its perfected security interest gives it priority over Liberty Mutual as to those excess receivables. Liberty Mutual argues that it possesses an equitable right of subrogation that is superior to SBN's security interest. The Court is persuaded that although Liberty Mutual possesses some equitable rights, those rights do not permit Liberty Mutual to offset net losses incurred on some bonded projects with excess receivables from separate bonded projects, given the competing claim of a secured creditor.

Subrogation is the substitution of one party for another, with the new party paying the old party's debts and therefore obtaining the rights and remedies that would otherwise have belonged to the old party. *See Black's Law Dictionary* (9th ed. 2009). Subrogation is grounded in equity, rather than contract, and "is enforced solely for the purpose of accomplishing the ends of substantial justice." *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136 n. 12 (1962) (quoting *Memphis & L.R.R. Co. v. Dow*, 120 U.S. 287, 301–02 (1887)). In this case, Liberty Mutual as surety paid DeVere's debts and performed DeVere's obligations, incurring net losses in the process. Now, Liberty Mutual seeks to step into the shoes of the common project owners, the

5

NCDOT and the City of Raleigh, and set-off excess receivables from those surplus projects against losses incurred on other NCDOT and City of Raleigh projects.

But Liberty Mutual may not use its equitable right of subrogation to overcome SBN's perfected interest. Each bonded project must be treated separately. Liberty Mutual is not entitled to use surplus funds from one project to defray losses taken on other projects, even if the projects have common owners. Fourth Circuit precedent is clear: "[t]he doctrine of subrogation arises out of the unpaid debts on each contract; relates back in time to the execution of that specific bond; and is limited in scope to the debts arising under one contract." *W. Cas. & Sur. Co. v. Brooks*, 362 F.2d 486, 491 (4th Cir. 1966); *see also Lacy v. Md. Cas. Co.*, 32 F.2d 48, 53 (4th Cir. 1929) ("The [surety], therefore, was not entitled under the principles of subrogation to the profit derived from *this contract* except in so far as might be necessary to reimburse it for expenditures *made thereunder*.") (emphasis added). The Fourth Circuit has never recognized a surety's equitable right to set-off funds from one contract to reduce losses on a different contract at the expense of a secured creditor, and the Court declines to recognize such a right here. Each bonded project must be dealt with separately, and to the extent that there are excess receivables on any particular project, SBN is entitled to the surplus as a secured creditor.

Liberty Mutual's attempts to distinguish Fourth Circuit precedent is unavailing. The fact that *Brooks* and *Lacy* did not involve a project owner's to a set-off, but the equitable rights of other subrogated entities, does not make either decision any less persuasive. Liberty Mutual argues that its situation is different because it can step into the shoes of the NCDOT and the City of Raleigh, the project owners, and obtain an equitable set-off that way. But the Fourth Circuit has never recognized such a set-off, and a project owner's rights are not sufficiently different from the rights of the entities in *Lacy* and *Brooks* to justify a deviation from the reasoning of those decisions to

afford Liberty Mutual the set-off it requests. Liberty Mutual also argues that *Brooks* was premised on Ohio law, but it has since been relied upon by other jurisdictions and its reasoning remains persuasive. *See, e.g., Dependable Ins. Co. v. United States*, 846 F.2d 65, 67–68 (Fed. Cir. 1988) ("Subrogation is bottomed 'on the unpaid debts of each contract; relates back in time to the execution of that specific bond; and *is limited in scope to the debts arising under one contract.*'") (quoting *Brooks*, 362 F.2d at 491) (emphasis in original); *see also Ram Constr. Co. v. Am. States Ins. Co.*, 749 F.2d 1049, 1055 (3d Cir. 1984) (citing *Brooks*).

If the only question in this case was which party had a stronger public policy justification for receipt of the excess receivables, Liberty Mutual would have a stronger argument that it was entitled to the surplus. Instead, Liberty Mutual must ask the Court to award it the surplus receivables on purely equitable grounds at the expense of a perfected creditor. The Fourth Circuit made clear that equitable subrogation "goes no farther than the strict demands of equity and justice demand," and here Liberty Mutual cannot overcome the Fourth Circuit's prior decisions explicitly declining to recognize a set-off like the one that Liberty Mutual seeks. *Brooks*, 362 F.2d at 490. As such, partial summary judgment in SBN's favor is appropriate.

In sum, Fourth Circuit precedent does not support Liberty Mutual's claimed equitable set-off and clearly requires that each bonded project be treated separately. As such, SBN's perfected security interest in the receivables entitles it to the surplus on both the unique-owner and the common-owner projects. Further, SBN is entitled to any future excess receivables generated on contingent liability projects. Liberty Mutual, however, has a superior interest in receivables and contract funds on a particular bonded project up to the amount of its net loss on that project. SBN's motion for partial summary judgment is, therefore, granted, and Liberty Mutual's motion for partial summary judgment is denied.

## CONCLUSION

For the reasons discussed above, defendant's motion for partial summary judgment [DE 43] is GRANTED and plaintiff's motion for partial summary judgment [DE 47] is DENIED. The Clerk is DIRECTED to enter partial judgment in defendant's favor.

SO ORDERED, this **27** day of January, 2019.

Terrence W. Boyle
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE